**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
SAI E ZHUANG,

                      Plaintiff,

     v.                                                    **ORDER**

LUCKY NAIL SPA INC.,                         2:21-cv-06658-JMA-LGD
HAN JIAN JIAN, and RONGGAI YANG,        2:23-cv-05118-JMA-LGD

                      Defendants.
-----------------------------------------------------------X

**LEE G. DUNST,** Magistrate Judge:

      The litigation between these parties commenced more than years two ago concerning various wage-related issues arising from Plaintiff's employment at Defendants' nail salon in Queens, New York.  Since then, the parties failed to move the matter forward significantly and the attorneys representing both Plaintiff and Defendants withdrew from the case in early 2023.  In the aftermath of that unique circumstance, Plaintiff is now represented by three attorneys at the Troy Law Firm, while the two individual Defendants are proceeding *pro se* and the corporate Defendant is unrepresented.  Adding further intrigue to this odd situation, it is undisputed that, in early December 2022 before the withdrawal of the prior attorneys, the individual Defendants communicated with at least one attorney at the Troy Law Firm about potential representation in this case.  And, after not being retained by Defendants, the Troy Law Firm subsequently entered notices of appearance to represent Plaintiff in this case (as well as later filing a separate lawsuit in July 2023 on behalf of Plaintiff involving all the same parties and core set of facts as in the still-pending original action).

      One of the *pro se* Defendants has now filed a motion to disqualify the Troy Law Firm as a result of these earlier communications about potential representation.  Faced with this unlikely

set of facts, several key points inform the Court's analysis of this tangled situation. *First*, the disqualification of an attorney is "a matter committed to the sound discretion of the district court. . . . [and] [i]n exercising this power, courts 'balance a client's right freely to choose his counsel against the need to maintain the highest standards of the profession.'" *Freedman v. Rakosi*, No. 123CV00472, 2023 WL 3687783, at *3 (S.D.N.Y. May 27, 2023) (citations omitted). *Second*, "[a]n attorney-client relationship can arise prior to formal engagement. . . . [and] as a result, privilege may attach to a prospective client's 'initial statements' to an attorney who is not ultimately hired." *Newmarkets Partners, LLC v. Sal. Oppenheim Jr. & Cie. S.C.A.,* 258 F.R.D. 95, 100 (S.D.N.Y. 2009) (citation omitted). *Third*, "[b]ecause the defendants in this case are proceeding *pro se*, the court is mindful of its 'obligation... to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training,' and the court will therefore construe the defendants' submissions 'liberally' and interpret them 'to raise the strongest arguments that they suggest.'. . . [and] '[t]he court's duty is even broader in the case of a *pro se* defendant who finds herself in court against her will. . . .'" *Love Grace, Inc. v. Santos,* 19-CV-4029, 2020 WL 6507328, at *3 (E.D.N.Y. 2020) (citations omitted). *Fourth*, several "other courts have raised troubling concerns about the Troy Law Firm's performance" in other cases in the Eastern and Southern Districts of New York. *Leong v. Laundry Depot, LLC*, No. 19CV03545, 2023 WL 6226415, at *8 (E.D.N.Y. Sept. 26, 2023) (collecting cases). As set forth herein, the Court concludes that the relief sought by the *pro se* Defendant is warranted and therefore grants the motion to disqualify the Troy Law Firm in the two cases pending before the undersigned involving all these same parties.

# I.      BACKGROUND

## A.  Commencement and Initial Phase of Plaintiff's Litigation (November 2021-November 2022)

On November 30, 2021, Plaintiff Sai E Zhuang filed a complaint against Defendants

Lucky Nail Spa Inc., Han Jian Jian, and Ronggai Yang for alleged violations of the Fair Labor

Standards Act ("FLSA") 29 U.S.C. § 201 *et seq*. and New York Labor Law ("NYLL"), arising

from Defendants' allegedly improper employment policies, patterns, and practices.  ECF No. 1

(the "Complaint" or the "the 2021 Case").  According to the Complaint, Plaintiff resides in

Queens and was employed at Lucky Nail's East Rockaway location in Queens.  *Id.* ¶¶ 11-12, 14.

Defendant Han is an owner and principal of Lucky Nail and resides in Flushing.  *Id.* ¶ 19.

Defendant Yang is "an owner/principal and/or manager" of Lucky Nail.  *Id.* ¶ 28.  While not

alleged in the Complaint, subsequent filings contend that Ms. Yang is Mr. Han's mother.  ECF

No. 56 ("Han Declaration") at 6 ("I am one of the individual defendants in the matter captioned

above with my mother, Ronggai Yang, the other individual defendant in the matter.")  The

Complaint contains ten causes of action alleging violations of the FLSA and NYLL and one

cause of action alleging the filing of false federal tax returns.  ECF No. 1 ¶¶ 48-101.  The case

was initially assigned to District Judge Joan M. Azrack and Magistrate Judge James M. Wicks. [1]

Dec. 1, 2021 Order.

At the outset, Plaintiff was represented by Ricardo Morel, Esq.  ECF No. 1.  On

December 23, 2021, Jim Li, Esq. filed a notice of appearance on behalf of all three Defendants.

ECF No. 11.  The case proceeded into discovery under the supervision of Judge Wicks during

the first half of 2022.  *See, e.g.*, ECF Nos. 16, 17, 20 (Judge Wicks' discovery orders).  On June

---

[1] As Lucky Nail was incorporated in Nassau County, the Complaint was assigned to federal judges in the Central Islip courthouse based on Plaintiff's representation that the claims "occur[ed] in Nassau or Suffolk County." ECF No. 2 at 2

2, 2022, Aaron Lebenger, Esq. filed a notice of appearance replacing Mr. Li as counsel for all three Defendants.[2]  ECF No. 21.  The parties then engaged in an unsuccessful mediation and later renewed discovery in the summer and fall of 2022 (now under the supervision of the undersigned to whom the case was randomly reassigned on June 7, 2022).  *See, e.g.*, June 6, 2022 Order; June 7, 2022 Order; September 19, 2022 Order; September 21, 2022 Order; October 13, 2022 Order; October 28, 2022 Order.

On November 16, 2022, the Court conducted a status conference with Mr. Morel and Mr. Lebenger on behalf of their respective clients.  ECF No. 29.  During that conference, the undersigned ordered that any amended pleadings be filed by November 22, 2022, all discovery be completed by January 20, 2023, any dispositive motion practice commence by March 24, 2023, a joint pretrial order be filed by that same date, and the parties next appear for a conference on April 11, 2023.  *Id.*  Neither attorney indicated to the Court at that time that they expected to withdraw as counsel for their clients in this case.

### B. Communications Between the Troy Law Firm and Defendants Han and Yang (December 2022)

Several weeks after the court conference on November 16, 2022, there were a series of communications between Defendants Han and Yang and the Troy Law Firm about potential representation in this case.  The Troy Law firm maintains offices in Flushing and employs several attorneys, including Mr. John Troy, Esq.  *See Troy Law*, http://www.troypllc.com (last accessed Jan. 8, 2024).  According to Mr. Troy, "[t]he bulk of my practice consists of representing Chinese-speaking plaintiff employees in wage-and-hour cases."  ECF. No. 65 ¶ 3.

---

[2] On March 14, 2022, Mr Li was killed in his law office in Flushing during an alleged altercation with a client in another case. *See* Client Charged in Fatal Stabbing of Lawyer, a Tiananmen Activist, N.Y. TIMES, (Mar. 15, 2022); *see also* ECF No. 30 at 1 ("On March 19, 2022, Jim Li was tragically murdered, and the firm was dissolved.").

There is no dispute about the existence of these communications between these two Defendants and the Troy Law Firm in early December 2022.  *See, e.g.*, ECF Nos. 51 (Mr. Troy's declaration and exhibits), 56 at 6-17 (Mr. Han's declaration and exhibits), 65 (Mr. Troy's supplemental declaration).

      1.  <u>December 5, 2022 Telephone Call</u>

Mr. Han and Mr. Troy agree that they spoke by telephone on December 5, 2022, but there are critical disputed facts regarding substance of their conversation.

      a.  Han's Version

According to Mr. Han's sworn declaration, Mr. Lebenger advised him on or about November 2022 that he intended to retire due to personal health issues.  ECF No. 56 at 6. Subsequently, Mr. Han called the Troy Law Firm on December 5, 2022, and "had a conversation for several minutes" with Mr. Troy.  *Id.* at 6-7.  Mr. Han provides the following description of the substance of his conversation with Mr. Troy:

> Upon the best of my recollection, I told Mr. Troy that I run a small nail spa and was sued by a former employee in December 2021. But I had all the work and payment records signed by the plaintiff, which showed that she was sufficiently paid, and that she worked only two days a week but she claimed she worked six days a week. I also told him that she made some serious false statements in the complaint and defamed me. The real reason that she sued me is she was not satisfied that I refused her suggestion of not releasing w-2 for her in 2021 because she wanted to apply for unemployment benefits, which would necessarily increase my corporate income tax.  At the end of our conversation, Mr. Troy told me that he would help me win the case and would send me messages about payment of attorney fees and ask me more information about the case.

ECF No. 56 at 7.

> b.  Troy's Version

Mr. Troy submitted two sworn declarations that provide different levels of detail about the December 5, 2022 telephone conversation with Mr. Han.  *Compare* ECF No. 51 *with* ECF No. 65.  According to Mr. Troy's first sworn declaration, his office "received a call from what seemed to be one of the employers of Lucky Nail Spa" at approximately 1:30 pm on December 5, 2022.  ECF No. 51 ¶ 3.  As to the substance of this call, Mr. Troy first explained that "[t]he defendants called plaintiff's office and plaintiff merely provided the defendant information laying out how much the office would charge to handle the matter but even that was in a basic form."  *Id.* ¶ 14.

Subsequently, Mr. Troy submitted a supplemental declaration, providing additional detail about the aforementioned telephone conversation with Mr. Han.  ECF No. 65.  In this second submission, Mr. Troy added information about the substance of the conversation, which was not included in his earlier sworn declaration:

> The person who called introduced himself as Mr. "Han" and did not give his full name— based on how this case proceeded after my appearance on behalf of Plaintiff, I believe this to have been Han Jian Jian. He told me he had been sued, but not by whom or about what.  I told "Mr. Han" that I needed to know the parties' names so my office could run a conflict check.  I also told "Mr. Han" that I typically charge defendants by the hour, with a retainer down— that he should consider that fee arrangement and that if he was agreeable to that arrangement, he should tell me.  "Mr. Han" did not say anything else over the phone.  The December 5, 2022 telephone conversation lasted only about two (2) to three (3) minutes. "Mr. Han" did not tell me anything about the claims, defenses, facts, or other things regarding the case during the December 5, 2022 telephone conversation.

*Id.* ¶¶ 5-10.

2.   Emails and Text Messages On December 5, 2022 and
     December 7, 2022

Mr. Han and Mr. Troy agree that they then exchanged in further communications

regarding the possible retention of the Troy Law Firm.  ECF Nos. 51 ¶¶ 4-10 (citing Exs. 1 &

2); 56 at 7-15; 65 ¶ 10. Mr. Troy represents that:

> [a]fter our office hung up the phone, we began texting the number that just called
> us and provided the usual message that we provide to all their new clients that call
> them, having them detail why that have called and what they are looking for from
> our office. . . . [and] [a]fter, the said person stated that they provided the documents
> they wanted this office to look at by email and requested to know how much the
> office charged for their services.

ECF No. 51 ¶¶ 4-5.

On December 5, 2022, at approximately 1:46 pm, the Troy Law Firm received an email

with no text.  *Id.*  Attached to the email were apparent photographs of the Complaint and the

summons issued to Defendant Yang.  ECF Nos. 51 ¶ 6 (Ex. 1) & 65 ¶ 10.  According to Mr.

Troy, this email was sent by Defendant Yang.  ECF No. 51 ¶ 7.  In response to that email, the

Troy Law Firm sent a text message to the same number that had placed the previously described

telephone call and explained that "the consultation fee was $300 and that the case is very far

along."  *Id.* ¶ 8.  The communications by text messaging then continued as "the number

requested how we bill and to that our office responded by stating that there was no way in

knowing how much we will charge because we would charge by the hour and for the amount of

hours."  *Id.* ¶ 9.  There was no response to that final text message from the Troy Law Firm in the

chain which apparently concluded on December 7, 2022.  *Id.* ¶ 10 (citing Ex. 2).

Mr. Han's declaration recounts the same text message chain with the Troy Law Firm but

does not mention Ms. Yang's email with photographs of the Complaint and the summons on

December 5, 2022.  *Id.* at 7-15.

3.   Termination of Communications Between Defendants and the
Troy Law Firm

Apparently, there were no further contacts between Mr. Han and the Troy Law Firm after

the text exchange ended on December 7, 2022.  Mr. Han has provided the Court with the

following explanation for this:

> I did not have further communications with Troy Law and did not retain Tory [*sic*]
> Law because several days after that, my former attorney, Mr. Arron [*sic*] Lebenger
> told me Ricardo Morel Esq., the former counsel of Plaintiff, told him that Plaintiff
> would like to settle the case in an amount of $10,000, which changed suddenly,
> upon belief and knowledge, after Plaintiff consulted Troy Law because Troy Law
> has a reputation in the Chinese American community for propagandizing the large
> amount of money they won for the plaintiffs against small-business owners and
> putting a lot of small businesses into bankruptcy by pulling them into all-consuming
> years of litigations.

ECF No. 56 at 16 ¶ 11.

4.   Defendants' Attorney's Withdrawal Motion, Plaintiff's Attorney's
Withdrawal Motion, and Subsequent Court Proceedings
(December 2022-February 2023)

On December 23, 2022, Mr. Lebenger filed a motion to withdraw as counsel for

Defendants.  ECF No. 31.  The purported basis for Mr. Lebenger's withdrawal motion was as

follows: "[d]uring the last seven months of litigation I have had various consultations with the

defendants. As time went on these discussions became disagreements. The differences are now

so great and obstreperous that I believe it is now mandatory that I withdraw as counsel for the

defendants." ECF No. 30 at 2.[3]  On December 27, 2022, the Court scheduled a status conference

for February 13, 2022 to address Mr. Lebenger's withdrawal motion, and determine whether

Defendants would retain new counsel or proceed *pro se*.  Dec. 27, 2022 Order.

---

[3] On December 30, 2022, Plaintiff advised the Court that there was no opposition to Mr. Lebenger's
withdrawal motion.  ECF No. 34.

On January 2, 2023, Mr. Morel (on behalf of Plaintiff) requested adjournment of the upcoming fact discovery deadline to February 20, 2023, citing his own recent health issues and Mr. Lebenger's withdrawal motion.  ECF No. 33.  On January 3, 2023, the Court adjourned all previously ordered deadlines in light of Mr. Lebenger's pending withdrawal motion.  Jan. 3, 2023 Order.  It should be noted that Mr. Morel's aforementioned letter to the Court did not indicate that he had any intention to withdraw as counsel for Plaintiff.

Approximately one month later, on February 5, 2023, Mr. Morel filed a motion to withdraw as Plaintiff's counsel. ECF No. 36.  Mr. Morel advised the Court that "I am retiring, and can no longer effectively provide services that proper representation requires in this matter. . . [and] [u]pon medical advice, I have relocated to the Southwest, more than 2,000 miles away from New York."  ECF No. 36-1 ¶ 3.  Furthermore, Mr. Morel's motion included a sworn declaration by Plaintiff that she consented and intended to be "substituted as attorney of record appearing *Pro Se*."  ECF No. 36-2 (emphasis in original).  Notably, Plaintiff's sworn consent is dated January 1, 2023, and was notarized on January 9, 2023.  *Id.*  On February 6, 2023, the Court ordered "all attorneys (current and new counsel) and all parties themselves to attend the teleconference on 2/13/2023," and reminded the parties that "the Court has not yet ruled on the motions by both Plaintiff and Defense attorneys to withdraw."  Feb. 6, 2023 Order.

On February 13, 2023, the Court held a status conference with Mr. Lebenger and Mr. Morel, but their clients did not attend nor did new counsel on behalf of Plaintiff or Defendants. ECF No. 37.  As a result, the undersigned held the pending withdrawal motions in abeyance, ordered that notices of appearance by new counsel be filed by March 15, 2023, and directed that "all attorneys (current and new counsel) and all parties themselves" attend the next status conference on March 22, 2023.  ECF No. 37.

### C.  Communications Between the Troy Law Firm and Plaintiff (February 2023)

According to Mr. Troy's supplemental declaration, he received a telephone call from Mr. Morel on February 11, 2023, during which it was suggested that Mr. Troy replace Mr. Morel in several cases, including the instant one.  ECF No. 65 ¶¶ 11-12.  Subsequently, Mr. Troy communicated with a Chinese interpreter used by Mr. Morel to speak with his clients as Mr. Morel did not have Chinses language skills.  *Id.* ¶¶ 13-15.  Mr. Troy explains that he spoke with this Chinese interpreter on February 21, 2023, and she "provided me case numbers and summaries of all the cases that would be transferred to my firm, said she would reach out to the clients to put them in touch with me, confirmed they (including Sai E Zhuang) were interested in substituting me and my firm for Mr. Morel, and would make sure the case files were forwarded to me." *Id.* ¶ 16.  Mr. Troy explains that he then conducted a conflict check which did not identify any of the Defendants in this case.  *Id.* ¶¶ 17-18.

On February 23, 2023, Mr. Troy and two other members of the Troy Law Firm filed notices of appearance in this case.  ECF Nos. 38-40.  Notably, Mr. Troy's declaration does not mention any direct communications at all between Plaintiff and any member of the Troy Law Firm prior to the filing of these notices of appearance.

### D.  Attorney Withdrawal Motions, Motion to Amend the Complaint, and Subsequent Court Proceedings (March 2023-June 2023)

On March 22, 2023, the Court held a status conference, which was attended by Mr. Lebenger, Mr. Morel and Mr. Troy, as well as Defendants Han and Yang.  ECF No. 41.  During this conference, the undersigned granted the pending motions by both Mr. Morel and Mr. Lebenger to withdraw as attorneys of record.  *Id.*  While Mr. Troy appeared as new counsel for Plaintiff at this conference, there was no new attorney present for Defendants.

During the conference, Mr. Morel advised the Court that "[Defendants] indicated to me that apparently one of the persons they consulted with was Mr. Troy. And this was a while ago. …whether or not Mr. Troy should continue to represent the Plaintiffs because he has consulted with [Defendants] previous to being retained by Plaintiffs. This is something I leave up to your honor."  ECF No. 68 at 5.  Mr. Troy did not respond at the time to this statement about his prior contacts with Defendants.  The Court scheduled the next conference for April 20, 2023.  ECF No. 41.

On April 18, 2023, Plaintiff filed a status report indicating that there had been subsequent contact between the Troy Law Firm and *pro se* Defendants Han and Yang.  ECF No. 44.  In the status report, Plaintiff's counsel advised the Court that they would seek leave to amend the complaint in order "to change the caption of the case to reflect Mr. Han's true name (from Han Jian Jian to Jian Jian Han), to strike the IRS claims, and to add retaliation claim (claim No. 11) in Plaintiff's prayer for relief" and would "also seek an extension for discovery . . . after Your Honor's ruling on Plaintiff's motion to amend the complaint."  *Id.* at 2.  According to Plaintiff's counsel, *pro se* Defendants did not consent to this and indicated that "they are not going to retain a new attorney due to financial reasoning."  *Id.*  Notably, the long-expired deadline to amend pleadings was November 22, 2022.  ECF No. 29.

On April 20, 2023, the Court conducted a status conference with Ms. Tiffany Troy (one of the attorneys of record from the Troy Law Firm) and *pro se* Defendants Han and Yang.  ECF No. 45.  The conference was conducted by teleconference and lasted approximately 80 minutes in light of the need for an interpreter for Defendants Han and Yang who apparently do not speak English.  *Id.*  During the conference, the undersigned raised the issue previously disclosed by Mr.

11

Morel about possible contacts between Mr. Han and Mr. Troy and subsequently ordered as follows:

> Plaintiff shall make a submission to the Court regarding the Troy Law Firm's alleged prior communications with Defendants prior to Plaintiff's recent retention of the Troy Law Firm by 5/31/2023. Specifically, Plaintiff shall respond to the statement made by prior defense counsel during the 3/22/23 conference that "[Defendants] indicated to me that apparently one of the persons they consulted with was Mr. Troy. And this was a while ago. …whether or not Mr. Troy should continue to represent the Plaintiffs because he has consulted with [Defendants] previous to being retained by Plaintiffs. This is something I leave up to your honor." *See* FTR Recording of the 3/22/2023 Status Conference at 09:22-10:51. Defendants shall respond by 6/30/2023.

*Id.* at 1.  The Court further directed Plaintiff to file the motion to amend the complaint by May 31, 2023, and scheduled the next conference for July 19, 2023.  *Id.* at 1-2.  Subsequently, on May 31, 2023, Plaintiff filed the "Affidavit of John Troy In Regard To 2022 Conversation With Defendants" (ECF No. 51) and the motion to amend the complaint (ECF No. 52).  According to Plaintiff, "[t]he purpose of the proposed amendment is to (1) change the caption of the case to reflect Mr. Han's true name (from Han Jian Jian to Jian Jian Han), (2) to dismiss without prejudice Plaintiff's IRS claims (Count X) under Fed. R. Civ. P. 41(a)(2), (3) to include plaintiffs FLSA retaliation claims and (4) to conform Plaintiff's Prayer of Relief to the Statement of Claims—Count XI, New York Labor Law Retaliation."  ECF No. 54 at 4.

### E.  Han's Motion to Disqualify the Troy Law Firm, Plaintiff's Filing of a New Action Against the Same Defendants, and Subsequent Court Proceedings (June-October 2023)

On June 30, 2023, *pro se* Defendant Han filed his letter motion to disqualify the Troy Law Firm and included his sworn declaration with supporting exhibits.  ECF No. 56.  Plaintiff filed his opposition to the disqualification motion on July 14, 2023.  ECF No. 59.

During the time between those two filings and while both Plaintiff's motion to amend and Defendant's disqualification motion were still pending in the 2021 Case (assigned to Judge

12

Azrack and the undersigned), Plaintiff filed a new action in this District involving the same parties and same core set of facts on July 5, 2023.  *See Zhuang v. Lucky Nail Spa, Inc. et al.*, 23-cv-05118-GRB-LGD (the "2023 Case").  In this new complaint, Plaintiff alleges that the same Defendants willfully filed fraudulent federal tax returns and includes Plaintiff's Form W-2 as an exhibit.  2023 Case ECF. No. 1 ¶ 1 & 14; Ex. 1.  By contrast, the Complaint in the 2021 Case did not include Plaintiff's W-2 Form as an exhibit.  ECF. No. 1.

In commencing this new action against the same Defendants, the Troy Law Firm did not list the 2021 Case as one that was "arguably related" to the 2023 Case on the Civil Cover Sheet for the new filing.[4]  2023 Case ECF Nos. 2 at 2 & 4 at 2.  As a result, the 2023 Case was randomly assigned to District Judge Gary R. Brown and, by mere happenstance, to the undersigned (who is serving as the assigned magistrate judge in the 2021 Case).  Subsequently, the undersigned issued the identical order in both the 2021 and 2023 Cases directing Plaintiff to submit a letter with "an explanation for the relationship" between these two cases.  July 17, 2023 Orders.

On July 17, 2023, Plaintiff submitted the identical letter in these two cases with the following explanation:

> In response to Your Honor's order, we recently filed an IRC claim in Action 2 against the same defendants as in Action 1.  We acknowledge that in our

---

[4] The Civil Cover Sheet requires counsel to provide the following information:

> [p]lease list all cases that are arguably related pursuant to Division of Business Rule 50.3.1 in Section VIII on the front of this form. Rule 50.3.1(a) provides that A civil case is related to another civil case for purposes of this guideline when, because of the similarity of facts and legal issues or because the cases arise from the same transactions or events, a substantial saving of judicial resources is likely to result from assigning both cases to the same judge and magistrate judge. Rule 50.3.1(b) provides that [a] civil case shall not be deemed related to another civil case merely because the civil case: (A) involves identical legal issues, or (B) involves the same parties.  Rule 50.3.1(c) further provides that presumptively, and subject to the power of a judge to determine otherwise pursuant to paragraph (d), civil cases shall not be deemed to be related unless both cases are still pending before the court.

2023 Case ECF Nos. 2 at 2 & 4 at 2 (internal quotations omitted).

Memorandum of Law in Support of Motion for Leave to File First Amended Complaint, that is still pending for Your Honor's ruling, we decided to strike the IRC claims (See Dkt No. 54, p. 13). One of the compelling reasons why the undersigned filed a motion for leave to file first amended complaint (See Dkt No. 52-55) is that in the complaint, the former counsel for plaintiff Zhuang did not adequately plea the IRS claims whether from the facts and the law that plaintiff Zhuang encountered when she was still working with defendants. Furthermore, another reason why we filed a complaint in Action 2 is to separate the two different natures of claims between FLSA and IRC and to streamline between Action 1 and Action 2 in terms of preserving the statute of limitations in Action 2. The separation of the cases will help the Court not to merge between one case to another.

2021 Case ECF No. 60 at 1; 2023 Case ECF No. 11 at 1.  Plaintiff's counsel further noted that "plaintiff alleges that defendants willfully filed fraudulent tax information forms with the Internal Revenue Service" and, "due [*sic*] the recent changes of litigation strategy after conferring with our client, the undersigned will proceed with the IRC claims in a separate case." *Id.* at 1-2.  Notably, the Troy Law Firm's prior representations to the Court on April 18, 2023 and May 31, 2023 (ECF Nos. 44 & 54) regarding possible amendment striking the tax allegations in the 2021 Case did not disclose any intention to file the 2023 Case asserting those same tax allegations.

On July 19, 2023, the Court conducted a status conference in both the 2021 and 2023 Cases with Ms. Troy (appearing on behalf of Plaintiff) and *pro se* Defendants.  2021 Case ECF No. 61; 2023 Case ECF No. 12.  The Court then issued the identical order in both cases, denying without prejudice of Plaintiff's motion to amend in the 2021 Case, recommending that the 2023 Case be reassigned from Judge Brown to Judge Azrack (who was the District Judge on the 2021 Case),[5] and staying both the cases pending resolution of the disqualification motion.  *Id.*  The Court further granted *pro se* Defendants the opportunity to respond to Plaintiff's opposition to

---

[5] The 2023 Case was reassigned from Judge Brown to Judge Azrack on July 14, 2023.  2023 Case July 14, 2023 Order.

the disqualification motion by August 23, 2023.[6]  *Id.*  No additional filings were made by

Defendants.

On September 12, 2023, the Court ordered that both cases would remain stayed pending

resolution of the disqualification motion.  *See* Sept. 12, 2023 Order.  In addition, the Court

directed Plaintiff to file the following supplemental submissions:

> (1) a supplemental sworn declaration by Troy Law providing additional
> information, if any, regarding the substance of the 12/5/2022 telephone
> conversation between Troy Law and Defendant Jian Jian Han (DE 59 at 2-3), and
>
> (2) a detailed chronology (without disclosing the substance of any privileged
> discussions) of all communications and contacts regarding plaintiff's retention of
> Troy Law prior to the filing of notices of appearance by Troy Law on 2/23/2023
> (*see* DEs 30 & 40 (21-CV-6658)); and
>
> (3) a supplemental letter (no more than 3 pages) that addresses the relevance of
> New York Rule of Professional Conduct 1.18 to the pending disqualification
> motion (*see, e.g.*, *Freedman v. Rakosi*, No. 123CV00472ATSDA, 2023 WL
> 3687783 (S.D.N.Y. May 27, 2023)).

*Id.*  Plaintiff provided the Court with such supplemental information on October 23, 2023.  ECF

Nos. 65 & 66.

## II.   LEGAL STANDARDS

### A. Disqualification of Counsel

The legal standard for evaluating a motion to disqualify counsel is well established in the

Second Circuit.  *See, e.g.*, *Freedman v. Rakosi*, No. 123CV00472, 2023 WL 3687783, at *3-4

(S.D.N.Y. May 27, 2023); *Galloway v. Cnty. of Nassau*, 589 F. Supp. 3d 271, 277 (E.D.N.Y.

2022) (cases cited therein).  Judge Ann M. Donnelly of this Court recently summarized the

applicable standard as follows:

---

[6] The Court originally scheduled the next conference for September 21, 2023, and then November 16,
2023, but both were cancelled in light of the pending disqualification motions.  Sept. 12, 2023 Order; Nov. 2, 2023
Order.

A motion to disqualify is "committed to the sound discretion of the district court." *Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994) (citing *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 71 (2d Cir. 1990)). "The authority of federal courts to disqualify attorneys derives from their inherent power to 'preserve the integrity of the adversary process.'" *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (quoting *Bd. of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)). Because disqualification "invades the sanctity of the attorney-client relationship," it is generally "disfavored in the Second Circuit." *Goodwine v. Lee*, No. 10-CV-6019, 2014 WL 4377855, at *2 (S.D.N.Y. Sept. 3, 2014) (citing *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983)). And because motions to disqualify "are often interposed for tactical reasons," *Evans*, 715 F.2d at 792 (quoting *Board of Education v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)), courts require a "high standard of proof to disqualify the non-movant's counsel." *Walker v. Royce*, No. 20-CV-2386, 2021 WL 930348, at *2 (E.D.N.Y. Mar. 11, 2021) (quoting *Ello v. Singh*, No. 05-CV-9625, 2006 WL 2270871, at *2 (S.D.N.Y. Aug. 7, 2006)).

However, "any doubt is to be resolved in favor of disqualification." *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975). Disqualification is warranted only where "an attorney's conduct tends to taint the underlying trial," *Nyquist*, 590 F.2d at 1246, because "other ethical violations can be left to federal and state disciplinary mechanisms." *Hempstead Video*, 409 F.3d at 132; *see also Walker*, 2021 WL 930348, at *3 (permitting disqualification only if "an attorney's conduct tends to taint the underlying trial") (quoting *Giambrone v. Meritplan Ins. Co.*, 117 F. Supp. 3d 259, 267 (E.D.N.Y. 2015)). The court's analysis "may be informed by the disciplinary rules governing lawyers in New York, or the standards set by the American Bar Association." *Id.* (internal quotations and alterations omitted); *see also Hempstead Video*, 409 F.3d at 132 ("Such rules merely provide general guidance and not every violation of a disciplinary rule will necessarily lead to disqualification.").

*Galloway*, 589 F. Supp. 3d at 277; *see also Benevida Foods, LLC v. Advance Mag. Publishers Inc.*, No. 15CV2729, 2016 WL 3453342, at *10 (S.D.N.Y. June 15, 2016) ("Despite the difficult standard for disqualification, however, where the record presents a close question as to whether disqualification would be appropriate, courts 'must resolve any doubts in favor of disqualification.'") (citations omitted); *Zalewski v. Shelroc Homes, LLC*, 856 F. Supp. 2d 426, 432  (N.D.N.Y. 2012) ("in the disqualification situation, any doubt is to be resolved in favor of disqualification" (citing *Hull v. Celanese Corp.,* 513 F.2d 568, 571 (2d Cir.1975))).

**B.  New York Rule of Professional Conduct 1.18**

The applicable rule for the current motion is New York Rule of Professional Conduct

1.18 which addresses prospective clients.  *See Freedman*, 2023 WL 3687783, at *4-5.  This rule

prohibits an attorney from "represent[ing] a client with interests materially adverse to those of a

prospective client," that is, "a person who consults with a lawyer about the possibility of forming

a client-lawyer relationship," in the same or a substantially related matter, but only if "the lawyer

received information from the prospective client that could be significantly harmful to that

person in the matter."  N.Y. R. Prof'l Conduct 1.18(a), (c).  The "information" referred to in Rule

1.18 is "confidential information," which is defined as follows:

> "Confidential information" consists of information gained during or relating to the
> representation of a client, whatever its source, that is (a) protected by the attorney-
> client privilege, (b) likely to be embarrassing or detrimental to the client if
> disclosed, or (c) information that the client has requested be kept confidential.
> "Confidential information" does not ordinarily include (i) a lawyer's legal
> knowledge or legal research or (ii) information that is generally known in the local
> community or in the trade, field or profession to which the information relates.

*Freedman*, 2023 WL 3687783, at *5 (quoting N.Y. R. Prof'l Conduct 1.6(a)).

"The test [under Rule 1.18] focuses on the *potential* use of the information [received

from the prospective client]," not the "*actual* use."  N.Y.C. BAR ASS'N, *Duties to Prospective*

*Clients After Beauty Contests and Other Preliminary Meetings*, Formal Opinion 2013-1, at 5

(Oct. 1, 2013), available at  https://www.nycbar.org/member-and-career

services/committees/reports-listing/reports/detail/formal-opinion-2013-01-duties-to-prospective-

clients-after-beauty-contests-and-other-preliminary-meetings (last visited Jan. 10, 2024)

(emphases in original).  "Whether information could be 'significantly harmful' to a prospective

client would depend, of course, on the relevant facts and circumstances of the particular

situation."  *Id.* (footnote omitted).

The court in the Southern District of New York provided recent guidance on this

analysis:

> The rule does not define "significantly harmful" information, but it has been interpreted to include a party's settlement strategy; its "bottom line" in settlement; its "views and impressions of [the] litigation;" and its "opinions and impression of even public documents and facts." *See Benevida Foods, LLC v. Advance Mag. Publishers Inc.*, No. 15-CV-02729 (LTS) (DF), 2016 WL 3453342, at *11 (S.D.N.Y. June 15, 2016). The types of information that are not usually "significantly harmful" include information that is public; information regarding the "history of the dispute;" and information "likely to be revealed" in discovery.

*Freedman*, 2023 WL 3687783, at *5 (emphases in original).  Other courts have defined

"significantly harmful" information as follows:

> Information may be "significantly harmful" if it is sensitive or privileged information that the lawyer would not have received in the ordinary course of due diligence; or if it is information that has long-term significance or continuing relevance to the matter, such as motives, litigation strategies, or potential weaknesses. "Significantly harmful" may also be the premature possession of information that could have a substantial impact on settlement proposals and trial strategy; the personal thoughts and impressions about the facts of the case; or information that is extensive, critical, or of significant use.

*Id.* (internal citation omitted).[7]

---

[7] Another Southern District decision provided an even more expansive discussion:

> The rule does not define "significantly harmful" information, but one court has interpreted it to include a party's "undisclosed settlement strategy," its "bottom line" in settlement, "even if [the number] changes over time," its "views and impressions of [the] litigation," including its "thoughts on the ... strengths and weaknesses of the parties' respective positions," and its "opinions and impression of even public documents and facts." *Zalewski,* 856 F. Supp. 2d at 435-37. Another court has held that "significantly harmful" information includes a party's "intimate thoughts and actions at the time of the relevant events" underlying the action, because such knowledge may lead to "an unfair cross-examination." *Miness,* 762 F. Supp. at 480-81. In contrast, courts have held that information is not "significantly harmful" if it is public information, if it merely regards the "history of the dispute," or if it is "likely to be revealed at [the moving party's] deposition or in other discovery." *Zalewski,* 856 F. Supp. 2d at 435; *Bell v. Cumberland Cty.,* No. 09-6485, 2012 WL 1900570, at *8 (D.N.J. May 23, 2012) (applying the New Jersey analog to N.Y.R.P.C. 1.18).

*Benevida Foods,* 2016 WL 3453342, at *11.

### C. *Pro Se* Defendant

"Typically, a *pro se* litigant is afforded a 'degree of solicitude' because he 'generally lacks both legal training and experience and, accordingly, is likely to forfeit important rights through inadvertence if he is not afforded some degree of protection.'" *Domni v. Cnty. of Nassau*, No. 19CV00083, 2022 WL 18542486 (E.D.N.Y. Nov. 16, 2022), *report and recommendation adopted*, No. 19CV00083, 2023 WL 1382390 (E.D.N.Y. Jan. 31, 2023), *appeal dismissed*, No. 23-219, 2023 WL 3589304 (2d Cir. May 18, 2023) (citation omitted); *accord Levin v. Johnson & Johnson*, No. 16CV06631, 2023 WL 4687075, at *1 (E.D.N.Y. July 21, 2023).  "In general, *pro se* [litigants] are 'entitled to special solicitude,' and the court has a duty to read and interpret a *pro se* party's submissions 'to raise the strongest arguments that they suggest.'" *Koziol v. King*, No. 6:14-CV-946, 2015 WL 2453481, at *4 (N.D.N.Y. May 22, 2015) (citing *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks and citations omitted)); *see also Love Grace, Inc. v. Santos,* 19-CV-4029, 2020 WL 6507328, at *3 (E.D.N.Y. 2020) ("Because the defendants in this case are proceeding *pro se*, the court is mindful of its obligation ... to make reasonable allowances to protect *pro se* litigants . . . and the court will therefore construe the defendants' submissions liberally and interpret them to raise the strongest arguments that they suggest.") (internal quotations omitted).

### III.   DISCUSSION

*Pro se* Defendant Han seeks to disqualify the Troy Law Firm on the basis that Han "consulted with Mr. John Tory [*sic*] by phone for several minutes on December 5, 2022, and communicated by messages on December 7, 2022 regarding the subject matter of this case, including potential defenses and counterclaims," but the motion failed to cite Rule 1.18, which governs prospective client relationships.  ECF No.  56 at 1.  Similarly, the Troy Law Firm's

opposition also failed to cite Rule 1.18.  ECF No. 59.  In response to the Court's September 12, 2023 Order that the Troy Law Firm address relevance of Rule 1.18, the Troy Law Firm submitted a supplemental opposition.[8]  ECF No. 66.  For the reasons set forth below, the Court agrees that the Troy Law Firm should be disqualified from representing Plaintiff in the 2021 and 2023 Cases.

### A. *Pro Se* Defendants Were Prospective Clients of Mr. Troy

Defendant Han argues that he was a prospective client of Mr. Troy when he communicated about the need for new counsel.  ECF No. 56.  In response, the Troy Law Firm argues that Mr. Han was not a prospective client under Rule 1.18 because Mr. Han "could not have reasonably expected John Troy to have been willing to discuss the possibility of forming a lawyer-client relationship before performing a conflict check; and because he communicated with John Troy for the purpose of disqualifying him."  ECF No.  66 at 1.

Rule 1.18(a) provides in relevant part that "a person who consults with a lawyer about the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client."  N.Y. R. Prof'l Conduct 1.18(a).  It is clear from the record that Mr. Han consulted with Mr. Troy for the purposes of representation in the pending case, and that, as such, was a prospective client of Mr. Troy.  ECF No. 56 at 7 ("At the end of our conversation, Mr. Troy told me that he would help me win the case and would send me messages about payment of attorney fees and ask me more information about the case.").

The Troy Law Firm contends that Mr. Han was not a prospective client under Rule 1.18(e)(1) because he did not have a "reasonable belief that Mr. Troy was willing to discuss

---

[8] As the parties did not originally cite Rule 1.18, the Court is not addressing the other arguments presented by the parties in their submissions.

forming a client relationship with him" citing the need for a conflicts check and the fact that the

telephone conversation lasted only three minutes.  ECF No. 66 at 2.

The Court is unconvinced by this argument.  First, the need for the subsequent conflicts

check following the initial call does not undermine the fact that Mr. Han communicated with Mr.

Troy for the purposes of possibly creating an attorney-client relationship.  The Troy Law Firm

cites no case for the proposition that such a communication would not establish Mr. Han as a

prospective client.  Second, there is no minimum time required for the discussion to determine

whether someone seeking representation is a prospective client of an attorney.  The Troy Law

Firm cites no case for the proposition that a certain amount of discussion time is necessary.

Instead, the Court's analysis here must be guided by "the relevant facts and circumstances of the

particular situation."  *Freedman*, 2023 WL 3687783, at *5; *see also Benevida Foods*, 2016 WL

3453342, at *11 ("[T]he conclusion in a particular [disqualification] case can be reached only

after painstaking analysis of the facts and precise application of precedent.") (internal quotations

omitted).

Finally, the Troy Law Firm argues that Mr. Han was not a prospective client under Rule

1.18(e)(2) because Mr. Han only communicated with Mr. Troy for the improper purpose of

disqualifying Mr. Troy and preventing him from representing Plaintiff.  ECF No. 66 at 1-2.  The

Court rejects this argument.  First, there is nothing in the declarations submitted by Mr. Han or

Mr Troy to support this claimed nefarious purpose of the call on December 5, 2022.  *See* ECF

Nos. 51, 56, 65.  Second, this argument also fails based on the obvious fact that Mr. Han

contacted Mr. Troy on December 5, 2022, which was long *before* the public disclosure of

Plaintiff's January 1, 2023 consent to permit Mr. Morel to be substituted as counsel and for

Plaintiff to proceed *pro se*, Mr. Morel's February 5, 2023 motion to withdraw as Plaintiff's

counsel, or the February 11, 2023 call between Mr. Troy and Mr. Morell about taking over various cases for Mr. Morrell.  *Id.*

Confronted by a timeline that does not support their arguments, the Troy Law Firm suggests Mr. Han "was aware that his adversary's attorney intended to withdraw due to his retirement," citing the claim that Mr. Morell "eagerly and loudly anticipated his retirement within earshot of his own clients, his adversaries, and his adversaries counsel."  ECF No. 66 at 2. This rank speculation by the Troy Law Firm is unsupported in the record, and the Court rejects it.  *See Benevida Foods*, 2016 WL 3453342, at *11 ("In a case where the divulging of client confidences is at issue, 'speculation ... will not suffice.'") (quoting *Hickman v. Burlington Bio-Med. Corp.,* 371 F. Supp. 2d 225, 229 (E.D.N.Y. 2005)); *see also Freedman*, 2023 WL 3687783, at *8 (granting motion for disqualification and rejecting the speculative argument "that the instant motion was . . . filed for tactical reasons").

The Court therefore finds that *pro se* Defendants Han and Yang were prospective clients of Mr. Troy pursuant to Rule 1.18 based on the December 5, 2022 telephone conversation between Mr. Han and Mr. Troy, the December 5, 2022 email between Ms. Yang (Mr. Han's mother) and the Troy Law Firm, and the subsequent text messages between Mr. Han and the Troy Law Firm.

**B.  Mr. Troy Obtained Information That Could Be Significantly Harmful to**
***Pro Se* Defendants**

*Pro se* Defendant Han argues that he shared "confidences and secrets" with Mr. Troy during their telephone conversation on December 5, 2022.  ECF No. 56 at 4.  In response, "Mr. Troy denies receiving any information from Han Jian Jian, not even his real name, on the December 5, 2022 telephone call, other than that he had been sued."  ECF No. 66 at 3.   Based on the Court's review of the record, as well as its assessment of the credibility of the witnesses, the

Court finds that confidential information was in fact provided by Mr. Han to Mr. Troy. In addition, the Court finds that such information could be significantly harmful to *pro se* Defendants.

There is no dispute between the parties regarding the fact that Mr. Han and Mr. Troy spoke by telephone on December 5, 2022, and that there was a subsequent email involving Ms. Yang and text messages with Mr. Han. However, Mr. Han and Mr. Troy submit competing declarations about the substance of the telephone conversations. Mr. Han contends that they discussed various facts relating to the case including the existence of signed records showing that Plaintiff had been paid properly, Mr. Han's position that Plaintiff's claim of working six days per week was false, and Mr. Han's view that Plaintiff's motivation for the lawsuit related to Defendants' refusal to issue a W-2 form to permit Plaintiff to claim unemployment benefits. ECF No. 56 at 7. Mr. Troy denies that Mr. Han shared any detailed information during this telephone call. ECF Nos. 51 & 65.

The Court has carefully reviewed these sworn declarations, and given the facts and circumstances of this case and related issues, the Court finds that Mr. Han's version of the telephone call with Mr. Troy rings true. *See Freedman*, 2023 WL 3687783, at *8 ("where the record presents a close question as to whether disqualification would be appropriate, courts must resolve any doubts in favor of disqualification") (citations omitted). At the outset, the Court is "mindful of the court's obligation to extend special solicitude to *pro se* litigants" in its evaluation of *pro se* Defendant Han's submissions. *Heyliger v. Collins*, No. 3:11-CV-1293, 2014 WL 910324, at *4 (N.D.N.Y. Mar. 10, 2014); *see also Love Grace*, 2020 WL 6507328, at *3 ("Because the defendants in this case are proceeding *pro se*, the court is mindful of its obligation . . . to make reasonable allowances to protect *pro se* litigants . . . and the court will therefore

construe the defendants' submissions liberally and interpret them to raise the strongest arguments that they suggest.").

The Court is not convinced by the Troy Law Firm's argument that there was no substantive discussion during Mr. Troy's conversation with Mr. Han.  In reaching the conclusion that Mr. Han's description of the call is more credible, the Court considers how this issue was addressed by Mr. Troy over time.  When Mr. Morel first alerted the Court during the March 22, 2023 conference that Mr. Troy had consulted with Defendants before Mr. Troy represented Plaintiff, Mr. Troy did not respond and instead remained silent on this topic during the conference with the Court.  *See* ECF No. 68 at 5.  It was only when the Court later ordered Mr. Troy to respond to this allegation that he submitted his first declaration.  *See* Sept. 12, 2023 Order; ECF Nos. 65 & 66.  Moreover, Mr. Troy's version of what transpired during the telephone call with Mr. Han has evolved over time.  Specifically, Mr. Troy's first declaration provided only a thumbnail description of the call, while his second declaration (submitted pursuant to the Court's order) purported to add more details.  *Compare* ECF No. 56 *with* ECF No. 65.  The Court must consider the evolving responses by Mr. Troy over time to Mr. Han's allegations in response to the Court's orders.  *See  New Falls Corp. v. Soni*, No. 16CV06805, 2022 WL 17811448, at *10 (E.D.N.Y. Dec. 19, 2022) ("As officers of the court, all attorneys . . . owe the court a heightened duty of candor.") (citation omitted).

The undersigned's determination of what transpired during the December 5, 2022 telephone call and evaluation of Mr. Troy's initial silence and subsequent explanations is also informed by the fact that several courts in the Eastern and Southern Districts of New York have been critical of the conduct and performance of the Troy Law Firm in other cases.  In fact, this is not the first time that the Troy Law Firm has been the subject of a disqualification motion.  The

undersigned has identified three reported cases in recent years where the Troy Law Firm was confronted with and defeated disqualification motions in the New York federal courts. *See, e.g.*, *Guangcheng Chen v. Matsu Fusion Rest. Inc.,* No. 19-CV-11895, 2020 WL 6135764 (S.D.N.Y. Oct. 16, 2020); *Guan v. Long Island Bus. Inst., Inc.*, No. 15CIV2215, 2017 WL 11703847 (E.D.N.Y. Jan. 24, 2017), *report and recommendation adopted,* No. 15CV2215, 2017 WL 11703846 (E.D.N.Y. Mar. 6, 2017); *Xiao Hong Liu v. VMC E. Coast LLC*, No. 16CV5184, 2017 WL 4564744 (E.D.N.Y. Oct. 11, 2017).[9]  Of these three prior disqualification cases involving the Troy Law Firm, only the *Xiao* case implicated information shared by a prospective client in a conversation with Mr. Troy.  *Xiao Hong Liu*, 2017 WL 4564744, at *3-4.  Notably, the disqualification motion in that case was denied because "it is undisputed that the two never discussed the instant wage and hour matter, other than in the most general terms. . . . [and the prospective client] revealed no confidential information to Mr. Troy that could be 'significantly harmful' to her." *Id.* at *4.

Furthermore, outside the disqualification motion context, "other courts have raised troubling concerns about the Troy Law Firm's performance."  *Leong v. Laundry Depot, LLC*, No. 19CV03545, 2023 WL 6226415, at *8 (E.D.N.Y. Sept. 26, 2023) (collecting cases).  In fact, the Troy Law Firm has been the subject of sanctions by several courts, which have noted "Troy Law's tendency towards prejudicial neglect of its clients' interests . . , [t]he Troy Law Firm has not acted as an adequate fiduciary . . , the Troy Firm has consistently demonstrated its inadequacy . . . [and the Troy Law Firm's] myriad performance issues."  *Id.* at *8 n.2 (citations omitted).  The Troy Law Firm's prior conduct in these other cases informs the undersigned's evaluation of the pending motion.  Therefore, based on the aforementioned facts and analysis,

---

[9] The Troy Law Firm did not cite any of these cases in its submissions to the Court in connection with this latest disqualification motion filed against it.  *See generally*, ECF No. 59 .

the Court concludes that Mr. Han's statement of what was discussed in the December 5, 2022 telephone call with Mr. Troy is the more credible version.

The Court must next determine whether the information that Mr. Han shared with Mr. Troy during the telephone conversation could be significantly harmful to the *pro se* Defendants. Based on the review of the record, the Court finds that such information could be significantly harmful.

Mr. Han contends that he discussed the claims and defenses in this case, including certain facts and his opinions about them and Plaintiff's motivation. ECF No. 56. The Troy Law Firm (while denying that any such information was even shared) argues that, even if it were discussed, Defendants' defenses and allegations are "a matter of public record on the docket" and, thus, "there was no disclosure of confidential or significantly harmful information." ECF No. 66 at 5. The Court disagrees as "[t]he fact that the documents are public is of no moment since a reasonable inference can be drawn that the discussion of the documents . . . included [Mr. Han's] views and impressions of such documents." *Freedman*, 2023 WL 3687783 at *7; *see also Zalewski*, 856 F. Supp. 2d at 436 ("Just having Defendants' opinions and impression of even public documents and facts would establish privileged communication and if revealed, in any form or fashion, would constitute significant harm.") (citation omitted). As a prospective client of Mr. Troy, Mr. Han is "entitled to freedom of apprehension and to certainty that [his] interest[s] will not be prejudiced by disclosure of confidential information." *Freedman*, 2023 WL 3687783 at *8 (citation omitted).

In addition, the Court's analysis of the disqualification motion is informed by the Troy Law Firm's representations regarding the motion to amend the complaint in the 2021 Case and the subsequent filing of the 2023 Case involving the same parties. The record is clear that the

Troy Law Firm repeatedly represented to the undersigned that it was seeking leave to amend the complaint to drop Plaintiff's tax-related allegations in the 2021 case and did not indicate that Plaintiff would be filing a separate case with those same claims.  In fact, it was only after *pro se* Defendant Han filed his disqualification motion on June 30, 2023 that the Troy Law Firm filed the complaint in the 2023 Case.[10]  Moreover, notwithstanding the fact that the complaints in these two cases involve all the same parties and core sets of facts, the Troy Law Firm failed to designate the 2023 Case as related to the 2021 Case.  As a result, it was assigned randomly to a different district court judge.  It was just a roll of the proverbial dice that the 2023 Case was randomly assigned the undersigned as presiding magistrate judge.  There is no legitimate excuse for the Troy Law Firm's failure to designate the 2021 and 2023 Cases as "arguably related," and it is disturbing that the Troy Law Firm filed the 2023 Case while the disqualification motion was already pending in the 2021 Case.  All these actions raise further troubling concerns about the conduct of the Troy Law Firm and must inform the Court's evaluation of the *pro se* Defendant Han's disqualification motion.

The Court thus finds, in exercising its discretion and in the interests of preserving the integrity of the adversary process, that Mr. Troy must be disqualified from representing Plaintiff in the 2021 and 2023 Cases.  The Court concludes that Mr. Han's motion was not filed for tactical reasons, but out of a sincere and reasonable belief that the information he shared in the telephone conversation with Mr. Troy could be significantly harmful to Defendants in this case. Furthermore, "mindful of the court's obligation to extend special solicitude to *pro se* litigants, and in consideration of plaintiff's [submissions] in support of the motion to disqualify as a whole,

---

[10] Similarly, Plaintiff's W-2 Form (which was not an exhibit to the Complaint in the 2021 Case) was added as an exhibit to the complaint in the 2023 Case only after Mr. Han explicitly referenced the W-2 in his disqualification motion.

I find that plaintiff has satisfied his burden." *Heyliger*, 2014 WL 910324, at *4.  In making this finding, the Court is cognizant that "any doubt is to be resolved in favor of disqualification." *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975); *accord Galloway*, 589 F. Supp. 3d at 277.  Finally, the Court concludes that, in light of the disqualification of Mr. Troy, it is appropriate under the circumstances that other attorneys at the Troy Law Firm also are disqualified from representing Plaintiff in the 2021 and 2023 Cases.  *See Freedman,* 2023 WL 3687783, at *8 (citing Rule 1.18(c) which provides that "[i]f a lawyer is disqualified from representation . . . no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter" with two exceptions).[11]

## IV.     CONCLUSION

For the foregoing reasons, Defendant Han's motion to disqualify is granted and the Troy Law Firm is disqualified from representing Plaintiff in the 2021 and 2023 Cases.  The Clerk of the Court is respectfully directed to terminate Troy Law Firm and attorneys Aaron Schweitzer, John Troy, and Tiffany Troy as counsel of record for Plaintiffs in *Zhuang v. Lucky Nail Spa, Inc. et al.*, 23-cv-05118-GRB-LGD and *Zhuang v. Lucky Nail Spa, Inc. et al.*, 2:21-cv-06658-JMA-LGD.


Dated: Central Islip, New York
      January 17, 2024

**SO ORDERED**:

s/ Lee G. Dunst
_____
**LEE G. DUNST**
United States Magistrate Judge

---

[11] Neither exception under Rule 1.18(c) applies as consent was not obtained from the prospective clients (*i.e.*, the Defendants), and other attorneys of the Troy Law Firm participated in the representation of Plaintiff, including by entering an appearance as counsel of record in both cases.  *See Freedman*, 2023 WL 3687783, at *8.